*278 The defendant, The Federal Gas & Fuel Company, it- is alleged, is a corporation under the laws of the state of Ohio, and that heretofore, to-wit, on May 22, 1899, a certain pretended ordinance, number 15231, was passed by the city council, which attempted to give to the defendant the right, franchise and privilege of using the streets, lanes, alleys, commons, bridges and public grounds of the city of Columbus, Ohio, for the purpose of laying pipes therein and carrying and distributing natural gas for fuel for both public and private use.
The second ordinance is number 15564, and was passed about two months later, to-wit, on July 31, 1899, and, with some additions, embraces generally the same terms and conditions, and grants the same rights and privileges as were attempted to be granted in the former ordinance. "
Later, to-wit, on April 3, 1900, another ordinance, number 16713, was passed, which gave to the defendant company the additional right and franchise to use its pipes for the purpose of conveying artificial gas.
The defendant company has been acting under these grants and has laid its pipes from the well to the city of Columbus, Ohio, a distance of about twenty-five miles, and has also laid its pipes in the city of Columbus, Ohio. It has expended for this purpose between one-half and three-quarters of a million of dollars, and in the city of Columbus alone has expended the sum of $108,000, and is at the present time supplying about thirteen hundred homes and factories with gas, and claims the right and privilege to extend its mains and pipes and supply additional consumers under these grants.
A preliminary question was raised on argument as to the right of the city solicitor to bring this action, but I will not discuss this matter at any length. I have very readily concluded that the broad powers given him by the statute, old Section 1777 (now Section 1536-667, Revised Statutes), to restrain the abuse of its ■corporate powers, or the execution or performance of any contract in contravention of law or ordinance, is full warrant and .authority for this action.
The objections to the validity of these franchises as urged by *279 the plaintiff may be classed under two general heads. These objections are:
1. That the franchises themselyes were .not passed in accordance with law and are therefore void.
2. That these franchises are rendered invalid by certain unlawful conditions contained in them, and a part of them.
The objection to the first ordinance is that it was never recommended, ratified or approved by the board of public works, in accordance with Section 30 of what is commonly called the Heffner act (Section 1545-195, Revised Statutes). I shall not go into any extensive review of the argument as to the necessity for this approval. It is true that the city of Columbus at that time was acting under a de facto form of government. But nevertheless acts, to be binding under a de facto government, must conform with that law. I am of opinion that the approval of the board of public works was necessary, and in this I think I am sustained by the circuit court of this county in the case of Herman against the city of Columbus (unreported).
The two subsequent ordinances, however, were properly passed. But it is claimed that they are merely dependent on the first ordinance; that is to say, being mere amendments thereof, and therefore they must fall with it. A reading of the second ordinance will not sustain this contention. It is complete in itself. It was evidently passed to obviate the defect discovered in the first ordinance. From its very nature, it is so full and comprehensive, and, irrespective of any other ordinance, so completely grants the rights, privileges and franchises sought to be enjoined in this case, that I can not hold it to be merely dependent or amendatory. Its references to the first ordinance are not in such terms as would justify a court in saying that the whole act was a mere amendment thereof.
While it is not necessary for the determination here, nevertheless the references to this former invalid ordinance, instead of engrafting upon the second ordinance the character of a mere amendment, in fact and in law adopt as a part of itself, certain portions of said original invalid ordinance, and treating the said first ordinance as a mere resolution or memor *280 andum, spread on the minutes of the council, if there is certainty and definiteness as to its character and terms, it may thus be referred tó and made a part of the subsequent ordinance, just as effectually as a reference to any other record, contract, plan, specification or other document capable of certainty and definiteness. Indeed, it is not difficult to find ordinances passed, and including in themselves, by adoption, many less certain records, articles and contracts, than in this ordinance.
My conclusion upon this contention, therefore, is, that by virtue of the two subsequent ordinances, the rights granted in all three were properly passed and were properly attempted to be conferred. Therefore, the only remaining question is the second objection heretofore stated.
This contention is that, even assuming the passage of the ordinances to have been validly made, they are, nevertheless, annulled and are void by reason of certain unlawful conditions, to-wit:
1. One of the conditions of this franchise and grant was that the city should receive ten per cent, of all increase in price over fifteen cents per thousand cubic feet.
• 2. That the city reserve unto itself the right to purchase all the gas pipes and mains of the defendant company which .were lying within the city, and that if the parties themselves could not agree upon the price, the parties should each select an arbitrator, and these two should select a third; and, moreover, the city still reserved unto itself the right to condemn the property for its own use.
3. That the defendant company is, by the terms of the franchises, forbidden to sell, lease or dispose of its franchises to any person, firm or corporation interested in supplying natural gas to consumers in the city of Columbus, Ohio.
It is contended that these three conditions go to the very life of the franchises and were the moving consideration for the passage of the ordinances, and that but for them the franchises would never have been granted.
To determine whether this is true or not, we must look to *281 the entire franchise conferred, and all its terms and conditions. What did the city grant? In substance and very briefly, the following:
Í. The right -and privilege to use the streets, lanes, avenues, alleys, commons, bridges and public grounds of the city of Columbus for the purpose of laying pipes to be used for carrying natural gas for fuel for public or private use.
2. The right to dig and excavate in all city streets, etc.
3. The limitations as to High street, except where necessary to cross the street; and certain other limitations for placing the pipes in paved and improved streets.
4. Certain limitations and requirements as to the placing of pipes in alleys.
5. Limitations as to obstructing or interfering with the use and occupancy of any street, lane, avenue or alley, and for the protection of pipes, drains, ditches, sewers, etc., already in streets.
6. The requirement as to replacing and relaying all pavements, curbs, gutters, etc., which were disturbed; and the provision that, in case of failure so to do, the city itself should make the repairs at the expense of said defendant company.
7. The said company bound itself to preserve the city safe, free and harmless from all damages, costs or expenses which may be incurred, or which may happen to persons or property by reason of anything done by said defendant company.
8. A regulation as to the pressure of gas in pipes and requirements for ventilation of same.
9. A limited time within which the defendant company should complete its work and be furnishing its gas.
10. A provision as to forfeiture in case of suspension of its operations for a period of six months or more.
11. A provision requiring the defendant company to furnish gas to any community of ten neighbors in a locality of four hundred feet square, upon written request, etc.
12. A limitation for the life of the franchise to a period of twenty-five years.
13. A provision that a good and sufficient bond, in the sum of $50,000, should be given, conditioned that the company would *282 lay its pipes and would supply the natural gas, and would save the city harmless from all loss or damage, etc.
14. The further provision that the said company might lay pipes and carry artificial gas to be used for either fuel or light.
In addition to the foregoing, the three objectionable conditions were also embodied, and some other conditions not necessary to mention here.
It is claimed on the part of the city that the three conditions mentioned are beyond the power of the city council; that is' to say, that the city has no right to exact ten per cent, of .all increase in price over fifteen cents per thousand cubic feet, .and it has no right to purchase the pipes of this company; ■and that it has no right to prevent this company from selling <or disposing of its plant to any person, firm or corporation interested in the selling of. natural gas.
Whether any of these provisions are lawful or unlawful is not necessary to be determined in this case, for the reasons which I shall hereafter state. In the event that the city should ■ever attempt to exact the ten per cent., or should ever attempt to purchase the gas pipes, etc; or in case the company should ■ever attempt to sell or dispose of its franchise, rights and ■privileges, these questions can be determined at such time.
My conclusion is that they are not such conditions as go to the life of the ordinances. I am unable to see or understand why the franchises would not have been granted had these conditions been omitted. The experience and history of municipal grants for these purposes show that they are generally granted without any such conditions therein. The main purpose and object of these franchises were to secure for the ■city of Columbus natural gas and to enable the company to lay its pipes for that purpose. The three conditions objected to are minor factors embraced in the grant, and are clearly additional or surplusage conditions. If they are' illegal conditions, it might be a sufficient answer to say that all persons, including the city of Columbus, as well as the defendant, must have known, and are presumed to have known, that they were illegal when they were inserted. If they are legal, of course the plaintiff; would have no contention in that regard.
*283 My conclusion, after reviewing all the cases cited and upon reason, is that conditions, even if they were illegal, do not go sufficiently to the life of the franchises as to warrant their annulment.
Another question is presented by reason of a demurrer filed to the first defense in the answer. This raises the question as to whether or not the municipality is now estopped. The doctrine of estoppel is not applied to municipalities with that rigor wdth which it applies to individuals, and for a good reason. A municipality only has those powers which are expressly granted it by statute and which are necessary to carry out those grants in a proper manner. People who deal with municipalities must do so at arm’s length, and are presumed to know. Nevertheless, a municipality may, under proper circumstances, be estopped as to anything which it had the legal right and power to do, and this doctrine is settled as being the correct and true doctrine with reference to municipalities, unless by statute that estoppel is prevented. In the case at bar it would be unnecessary for this court to decide this question; but, I may say that I could conceive of no stronger set of facts which would estop the city than the ones presented here. The city has stood by silently and permitted the defendant company to fully complete and mature all its plans to expend over a half million dollars and to be now in the very act of supplying about thirteen hundred homes with gas. It has given the bond required and taken every step necessary to perfect its rights under the statute. It would be highly inequitable to permit the plaintiff now to have any relief by injunction. I so decided, in a ease involving somewhat similar equities, some time ago, in the case of Columbus v. Bohl, 1 N. P. — N. S., 469.
The action of the plaintiff, therefore, in this case is without merit. The demurrer to the first defense is overruled, and the plaintiff’s action is dismissed with costs.
There is an allegation in this petition that the defendant corporation was about to sell to some person unknown. If counsel wish, the entry may be withheld in this ease until they *284 determine whether or not they wish to bring an action to test that particular allegation, and the temporary injunction will be at once granted until the case may be heard; that is to say, as to whether or not that is a valid condition of the franchise, that it may not sell to any person now engaged in the business 1 of supplying natural gas.
James M. Butler, City Solicitor, and J. E. Safer, for plaintiff.
Dyer, Williams & Stouffer, Blondín, Bice & Ginn, Gilbert, Hills & Van Derveer, F. H. Southard and F. A. Durban, for defendant.
And thereupon the plaintiff noted an exception and gave notice of appeal, the bond being fixed at $150.